[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Plaintiff brings this action by amended complaint of June 11, 1998 in two counts, for breach of contract and failure to settle her claim in good faith.
Defendant essentially denies the allegations of both counts one and two because the claims for payment for medical services "are excluded from coverage under the subject medical insurance policy under Section EX-`Exclusions, Conditions and Limitations', Section C.9. . . . and Section C.18.-"
In a second special defense defendant alleges that count two fails "to state a claim upon which relief can be granted."
 FACTS
On or about August 1971 the plaintiff became insured for certain medical expenses for herself and later for her daughter, Alexis, before 1994.
On October 31, 1994 plaintiff took her daughter to be examined by Dr. Judd B. Fink, D.D.S. (Fink). The doctor found "a developmental deformity that can only by corrected surgically." This deformity was congenital. Fink knew that plaintiff had some medical insurance with defendant and on November 21, 1994 he wrote defendant telling it of the necessary surgery and asking "if this surgery will be a covered procedure and if so, what percentage will Blue Shield consider." On December 13, 1994 defendant, by Debra Skitromo, wrote in reply to Fink's letter and told him that:
 "Ms. Eubanks is currently enrolled in the Century 94 policy with Major Medical. At this time there are no Managed Benefit requirements for surgical procedures. Please contact BlueCross BlueShield once the surgery is scheduled to see if this has changed.
 CPT code 21193-50 would be considered for coverage under this policy, subject to medical review, once the surgery is completed. The claim will be subject to the terms, conditions, and limitations of this policy and there is no guarantee of coverage. The surgical allowance is based on the itemized bill and operative report.
 If you have any questions, please contact the Customer Action Team at 1-800-548-0317."
On May 21, 1996 Fink performed the surgery in eight to ten hours as CT Page 8806 described in his letter of November 21, 1994. This produced bills which were sent to defendant from Hartford Anesthesiology Assoc., Inc. for $1,982.40, and from Hartford Hospital for $8,479.37. Defendant paid both bills in a procedural error and then asked for and received the return of both sums. Fink also tendered a bill of about $10,000 which defendant did not pay. Fink then, on May 14, 1997, wrote to defendant that:
 "Alexis Eubanks had surgery performed at Hartford Hospital on May 21, 1996. Prior to performing this surgery, we were told by several of your employees to go ahead perform the surgery and then a determination could be made for benefits to be paid. We were told that the procedure codes we gave, were covered procedures, but the claim would have to go for review. We were told Blue Cross and Blue Shield does not pre determine benefits. As a result of the information obtained, the 8 — 10 hour procedure was preformed under general anesthesia in the operating room."
Before the letter the claim had already been reviewed under defendant's appeal procedure and denied. Thereafter defendant again wrote to Fink on July 31, 1997 that his Level II Appeal had been presented to the Appeal Committee on July 30, 1997 and denied. Defendant's letter also said intra alia:
 "The Policy under which the Member is enrolled does not contain a Managed Benefit provision, therefore all claims are subject to retrospective review. The plan does contain the following exclusion:
 "Dental diagnosis, care, treatment, X-rays, or appliances, for any of the diseases or lesions of the oral cavity, its contents or contiguous structures, the extraction of teeth, the correction of malpositions of the teeth and jaw, or for pain, deformity, deficiency, injury or physical condition of the teeth, unless otherwise provided for herein".
 Your office was advised that Blue Cross Blue Shield of Connecticut could not guarantee a pre-determination of benefits for coverage of jaw surgery because such surgery is subject to medical review to determine available benefits. Our medical policy concerning jaw surgery does provide benefits in cases where there is the involvement of a tumor or trauma.
 It is the Committee's position that as the member does not meet our criteria for coverage of an otherwise excluded procedure, benefits were appropriately denied."
The surgery was never approved, either before or after and it did not involve a tumor or trauma.
The court finds that under this policy coverage was not to be determined until the surgery was complete, the doctor had submitted his operative notes and his discharge summary and then the defendant's committee determined the coverage.
The defendant's Policy Summary Booklet on page 36 provides that no benefits will be provided with respect to dental work for congenital deformations.
The defendant's denial was reasonable under the policy.
Judgment for defendant.
Norris L. O'Neill, J. CT Page 8807